## HICKS *v*. THE STATE.

CRIMINAL LAW.—*Murder.— Instruction.*— Where a husband and wife are jointly indicted and tried for murder, it is error to instruct the jury that to acquit either of them on the ground of self-defence, they should have feared, and had reasonable cause to fear, death or great bodily harm at the hands of the deceased.

SAME.—*Self-Defence.*—To justify a homicide on the ground of self-defence, it is not necessary that the accused should have believed that it was necessary to take the life of his assailant, in order to defend himself. If the death of the assailant results from the defendant's reasonable defence of himself, he is excusable, whether he intended that consequence or not, or whether he believed such result necessary or not.

From the Benton Circuit Court.

*R. P. Dehart* and *J. R. Coffroth,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

DOWNEY, J.—The appellant and William H. Hicks, her husband, were jointly indicted in the Newton Circuit Court, for the murder of Moses Kinney. On their application, the venue was changed to the Benton Circuit Court, where they

were tried.   He was acquitted, and she was found guilty of manslaughter.   A motion made by her for a new trial was overruled, and there was judgment against her, that she be · confined in the state female prison for two years.

The overruling of the motion for a new trial is assigned as error.

It is urged that the court misdirected the jury, and erred in refusing to grant a new trial on account of the misbehavior of one of the jurors trying the cause.

The first proposition of the first instruction, to which exception is taken, was given at the instance of the prosecuting attorney, and reads as follows: ·

"The criminal law holds sane men and women responsible for the ordinary exercise of their reason, and to excuse the defendants, or either of them, on the ground of self-defence, they should have feared, and had reasonable cause to fear, death or great bodily harm at the hands of the deceased."

It is urged that this part of the instruction was wrong, because it informed the jury, in substance, that to acquit either of the defendants on the ground of self-defence, they must find that both of them feared, and had reasonable cause to fear, death or great bodily harm.

The case was one in which a correct statement of the law on the subject of the right of·self-defence was exceedingly important to the appellant.   The evidence tended to show that the deceased was a man of intemperate habits, and under the influence of liquor at the time; that he had gone into the dwelling-house of the appellant, during the afternoon, in the absence of the husband of the appellant, and, in coarse language, made indecent proposals to her, and attempted, by force, to compel her to comply; but she got him out of the house, he threatening that she would not escape so well the next time.   The appellant and her husband occupied rooms up-stairs for a dwelling, having a shop in the lower part of the building.   In the evening, while the husband was absent after a bucket of water, the appellant went down-stairs, the stairway being outside of the building, to obtain something

from the lower part of the building. As she was about to return, the deceased came to her in such a manner as to alarm her. She retreated up the stairs backwards. The deceased followed her, and, as she says, having his pantaloons unbuttoned, his shirt raised, and his person exposed, with his pocket-book in his hand, and making indecent proposals to her. She ordered him away, but he persisted, and caught her by one of her arms. She then got a revolver, which she carried in a belt on her person, and struck him on the head, and gave him a turn round with her hand. He said, "Beg pardon, madam." Her revolver went off, and he fell over and down upon the ground. She stated in her evidence that she did not intend to kill him, but only to strike him, to prevent him from accomplishing what he was seeking to do. There was evidence tending to show that threats of violence had been made against the appellant and her husband, that had been communicated to them, which may tend to show why she carried the weapon.

The deceased was found to have been shot in the head, near the top, the ball ranging downward. When he was found by the person who first came to him, his pantaloons were found to be unbuttoned, and his pocket-book was lying on the ground not far from him.

The instruction is, we think, liable to the objection urged against it.

We have considered whether the fact that the jury acquitted one of the defendants did not sufficiently show that the instruction in question did not harm the appellant. But we think we cannot so hold, since it is apparent that the jury may have acquitted him on the ground that he was not present at the time of the homicide, and not on the ground of self-defence. This view of the question is rendered almost certainly correct when the evidence is considered, for it shows that the acquitted defendant was not present and did not participate in the act.

The other proposition of the charge given by the court, at

the instance of the prosecutor, to which an exception was taken, is as follows:

"The jury should find in behalf of the defendant, should they first find, beyond a reasonable doubt, from the evidence, that Moses Kinney was killed by the use of a deadly weapon, at the hands of one of the defendants; that the killing was done at a time when the defendant believed, and had reasonable cause to believe, that by the homicide alone could her own safety be secured."

It is urged that this part of the instruction is wrong, because it states, in effect, that the defendant had no right to defend herself, unless, at the time, she believed it could only be done by the homicide of the deceased.

The charge is very obscure. Its meaning is not apparent. If its meaning is that suggested by the counsel, it is clearly wrong.

The theory of self-defence is, that the party assailed has the right to repel force by force, and he need not believe that his safety requires him to kill his adversary in order to give him the right to make use of force for that purpose. When his life is in danger, or he is in danger of great bodily harm, or when, from the acts of the assailant, he believes, and has reasonable ground to believe, that he is in danger of losing his life or receiving great bodily harm from his adversary, the right to defend himself from such danger, or apprehended danger, may be exercised by him, and he may use it to any extent which is reasonably necessary. He need not believe that he can only defend himself by taking the life of his assailant. If the death of his assailant results from the reasonable defence of himself, he is excusable, whether he intended that consequence or not, or whether he believed such result was necessary or not.

It is well settled that one may resist, to the taking of life, in order to prevent the perpetration of a felony committed by violence and surprise, such as murder, robbery, burglary, rape, etc. Bishop Crim. Law, vol. 1, sec. 853 and n. 1, 5th ed.

We incline to the opinion that no error was committed by the court on the point relating to the alleged misconduct of the juror.

The judgment is reversed, and the cause remanded, with instructions to grant a new trial.

The clerk will certify to the superintendent of the prison, according to law.